IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**MICHAEL D. ROCK, JR.,**

     **Plaintiff,**

     v.                                        Civil Action No. 3:25cv6

**EASTERN GAS TRANSMISSION AND
STORAGE, INC.,**

     **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Eastern Gas Transmission and Storage, Inc's ("Eastern Gas") Motion to Dismiss Plaintiff's Complaint (the "Motion to Dismiss" or the "Motion").[1] (ECF No. 7.) Plaintiff Michael D. Rock, Jr. responded in opposition, (ECF No. 9), and Eastern Gas replied, (ECF No. 10).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons that follow, the Court will grant in part and deny in part the Motion. (ECF No. 7.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

## I. Factual and Procedural Background

### A. Factual Allegations[2]

On November 6, 2023, Mr. Rock began working with Eastern Gas as a Regulatory Analyst. (ECF No. 1 ¶ 8.) Eastern Gas provides "natural gas transmission and storage services in six eastern states" and employs more than 15 workers. (ECF No. 1 ¶¶ 2–3.) In both the second and third quarters of 2024, "[Mr.] Rock was rated [] a 'Successful Performer' in his performance evaluations, "which is the highest among the four rating categories." (ECF No. 1 ¶ 9.)

Mr. Rock "has suffered from depression and anxiety for several years." (ECF No. 1 ¶ 10.) In May of 2024, Mr. Rock "began treatment with Megan Green, a Licensed Professional Counselor, who diagnosed him with Major Depressive Disorder and Generalized Anxiety Disorder."[3] (ECF No. 1 ¶ 10.) Mr. Rock's condition impacts his ability to "sleep, concentrate, think, communicate and work." (ECF No. 1 ¶ 11.)

From May 2024 until September 2024, "[Eastern Gas] permitted all employees, including [Mr.] Rock, to work remotely one day per week." (ECF No. 1 ¶ 13.) However, on September 12, 2024, Eastern Gas "informed all employees that the hybrid remote schedule would end on October 1, 2024, and all employees would return to work 100% in person." (ECF No. 1 ¶ 14.) On September 23, 2024, Mr. Rock "completed a Confirmation of Request for Reasonable

---

[2] In considering the Motion to Dismiss, (ECF No. 7), the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Mr. Rock. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

[3] Mr. Rock states that "[d]epression is characterized by a persistent feeling of sadness, loss of interest in activities, and a lack of energy" and "[a]nxiety is an uncontrollable feeling of fear, worry[,] or panic." (ECF No. 1 ¶ 10.)

2

Accommodation form" in which he requested to "continue to keep [his] hybrid schedule of 1 day remote on Fridays." (ECF No. 1 ¶ 15 (internal quotation marks omitted).) In the request, Mr. Rock stated that keeping his hybrid schedule would allow him to continue "treating [his] disability by working with his provider in more depth" while completing his tasks for work. (ECF No. 1 ¶ 15.) The following day, September 24, 2024, Mr. Rock submitted a statement in support of his request from his Licensed Professional Counselor, Ms. Green, which stated, "[w]hile Michael is pursuing this treatment he would benefit from certain accommodations, such as keeping his 1 day hybrid schedule so that [he] can continue to be effective within his role." (ECF No. 1 ¶ 16.)

On September 24, 2024, Mr. Rock met with Tina Bullett, a Human Resources Business Partner for Eastern Gas. (ECF No. 1 ¶ 17.) At the meeting, Mr. Rock told Ms. Bullet that "Fridays were the days that he counseled with Ms. Green, when necessary, and that he needed flexibility to be able to step away from work and receive counseling treatment essential to performing his job." (ECF No. 1 ¶ 17.) On October 1, 2024, Ms. Bullett sent a letter explaining that "Eastern Gas was denying [Mr.] Rock's requested hybrid work accommodation and instead offering him use of a 'huddle room' in the office so that he could speak with his provider." (ECF No. 1 ¶ 18.) Ms. Bullett's letter "offered no rationale for denying [Mr. Rock's] request" and "did not claim that [the] request imposed a hardship to [Eastern Gas]." (ECF No. 1 ¶ 18.)

On the same day, Mr. Rock responded to Ms. Bullett's letter via email "to formally request reconsideration of the decision to offer an alternative accommodation of spending time in the huddle[] room instead of [his] original request." (ECF No. 1 ¶ 19.) In the email, Mr. Rock requested "a detailed explanation for the offer of an alternative accommodation, as my original request does not appear to cause any undue hardship for the company." (ECF No. 1 ¶ 19.) He

3

stated that his "disability requires time-consuming management" and that "the stability provided by [his] current schedule has contributed to his good performance." (ECF No. 1 ¶ 19.) Mr. Rock further wrote that "the huddle[] room does not offer the same level of support and stability" as the hybrid schedule.[4] (ECF No. 1 ¶ 19.)

On October 4, 2024, Ms. Bullett responded to Mr. Rock's email, writing: "The company is not denying an accommodation due to undue hardship, however, we are not obligated to adopt the specific preferred or requested accommodation and may instead offer alternative accommodations as long as they would be effective." (ECF No. 1 ¶ 22.) On October 9, 2024, Mr. Rock and Ms. Bullett exchanged "a series of emails" wherein Mr. Rock "insisted on receiving a detailed explanation as to how his requested hybrid schedule . . . imposed an undue hardship on [Eastern Gas]." (ECF No. 1 ¶ 23.) "Each time," Ms. Bullett stated: "We believe the accommodation we have provided is reasonable and I do not have anything further to add beyond what I have communicated previously." (ECF No. 1 ¶ 23.)

On October 16, 2024, Mr. Rock "escalated his requested accommodation" to Kelli Copley, the Human Resource Director for Eastern Gas.[5] (ECF No. 1 ¶ 24.) Mr. Rock referred to "[Eastern Gas's] own disability policy and ADA regulations that require [that] a denial of accommodations be based on undue hardship against the employer." (ECF No. 1 ¶ 24.) Mr. Rock also stated that "Eastern Gas's failure to provide such information violated its legal duty to engage in the 'interactive process.'" (ECF No. 1 ¶ 25.) Ms. Copley responded to Mr. Rock,

---

[4] In the Complaint, Mr. Rock added that "'the huddle room' offer was not a suitable solution to [his] condition" because it "does not provide him with any privacy to consult with his provider" and "does not allow [him] the ability to 'recharge' following an anxiety-filled workweek." (ECF No. 1 ¶ 20.)

[5] The Complaint does not specify the method by which Mr. Rock "escalated his requested accommodation." (*See* ECF No. 1 ¶ 24.)

4

stating: "The company is not obligated to adopt the specific preferred requested accommodation and may instead offer alternative accommodations." (ECF No. 1 ¶ 25.) On October 22, 2024, Ms. Copley "sent [Mr.] Rock another email", stating:

> Your request for accommodation was not denied. . . .
>
> We have responded to each of your five requests and have provided ample explanation of the equivalently effective alternative accommodations offered. Being in the office promotes employee interaction and team engagement in a consistent 5-day work week and ensures that [Eastern Gas] is properly situated to fully develop our personnel, to meet customer needs and to support key performance requirements.

(ECF No. 1 ¶ 26 (ellipses in original).)

Mr. Rock "has been reporting to work every day in order to keep his job."[6] (ECF No. 1 ¶ 30.) Mr. Rock "recently received a raise and bonus", but "his successful performance has come at the expense of his mental and physical health." (ECF No. 1 ¶ 31.) His "mental health has deteriorated significantly," resulting in "physical manifestations of anxiety, including heart problems and numbness in his extremities." (ECF No. 1 ¶ 30.)

Mr. Rock "is aware that [Eastern Gas] is actively searching to hire a new employee for a Director-level position to work 100% remotely." (ECF No. 1 ¶ 32.)

**B.     Procedural Background**

On January 6, 2025, Mr. Rock filed a three-count Complaint, alleging: (1) failure to accommodate under the American Disabilities Act ("ADA"); (2) failure to engage in an interactive process under the ADA; and (3) failure to accommodate under the Virginia Human Rights Act ("VHRA"). (ECF No. 1, at 7–8.)

---

[6] The Complaint does not specify the timeframe during which Mr. Rock "has been reporting to work every day." (*See* ECF No. 1 ¶ 30.)

On January 30, 2025, Eastern Gas filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 7.) Plaintiff Michael D. Rock, Jr. responded in opposition, (ECF No. 9), and Eastern Gas replied, (ECF No. 10).

## **II. Standard of Review: Rule 12(b)(6)**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff,

they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

### III. Analysis

Accepting Mr. Rock's factual allegations as true and drawing all reasonable inferences in his favor, as the Court must do at the motion to dismiss stage, Mr. Rock states his claims in for failure to accommodate under the ADA and the VHRA (Counts One and Three). (ECF No. 1, at 7–8.) However, Mr. Rock fails to state a standalone claim for failure to engage in an interactive process under the ADA (Count Two). (ECF No. 1. at 7–8.) Thus, the Court will grant in part and deny in part Defendant's Motion to Dismiss. (ECF No. 7.)

**A.   Mr. Rock States Claims for Failure to Accommodate Under the ADA and VHRA in Counts One and Three**

**1.   Legal Standard:  Failure to Accommodate under the ADA and VHRA**

Under the ADA, an employer discriminates against an employee by failing to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business[.]" 42 U.S.C. § 12112(b)(5)(A); *Webb v. Chesterfield Cnty., Va.*, No. 3:19-cv-00183-JAG, 2019 WL 2992011, at *2 (E.D. Va. July 8, 2019). Like the ADA, the VHRA prohibits employer refusal "to make reasonable accommodation to the known physical and mental impairments of an otherwise qualified person with a disability, if necessary to assist such person in performing a particular

7

job, unless the employer can demonstrate that the accommodation would impose an undue hardship on the employer." Va. Code § 2.2-3905.1. "Because they are 'substantively identical statutes,' the Court analyzes the ADA and VHRA discrimination claims together." *Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc.*, 677 F. Supp. 3d 383, 399 n.12 (W.D. Va. 2023) (quoting *Flippo v. Am. Home Prod. Corp.*, 59 F. Supp. 2d 572, 578 (E.D. Va. 1999)); *see also Ayers v. Wal-Mart Assocs., Inc.*, No. 7:23-cv-419, 2024 WL 4182706, at *9 (W.D. Va. Sept. 13, 2024) ("VHRA state claims mirror their federal counterparts and are subject to the same standards.").

To establish a prima facie case for failure to accommodate, a plaintiff must show that: (1) he or she was a qualified individual with a disability; (2) the employer had notice of the disability; (3) with reasonable accommodation he or she could perform the essential functions of the position; and, (4) the employer refused to make such accommodations. *Sumner*, 2016 WL 5852856, at *5 (citing *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (listing the elements of a prima facie case for failure to accommodate under the ADA); *Washington*, 677 F.Supp.3d at 399–400) (listing the same elements of a prima facie case for failure to accommodate under the VHRA). Although each element involves a question of fact, *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994), to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must nevertheless allege facts sufficient to state all the elements of a failure to accommodate claim. *See, e.g, Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 981 (E.D. Va. 2012) (granting motion to dismiss ADA failure to accommodate claim when plaintiff did not allege facts showing that "she requested a reasonable accommodation other than leave," or facts showing that "such a request was ever denied") (citation omitted)); *Webb*, 2019 WL

2992011, at *2 n.2 (whether an accommodation is reasonable is a question of fact, and therefore cannot be decided at the motion to dismiss stage).

### 2. Mr. Rock States Claims for Failure to Accommodate in Counts I and III

Mr. Rock satisfies each element of a prima facie failure to accommodate claim under the ADA (Count I) and the VHRA (Count III). Regarding element one, Mr. Rock plausibly alleges that he is a qualified individual with a disability. "[T]he ADA defines a 'disability' as including . . . a physical or mental impairment that substantially limits one or more major life activities.'"[7] *Akbar-Hussain v. ACCA, Inc.*, No. 1:16CV1323 (JCC/IDD), 2017 WL 176596, at *3 (E.D. Va. Jan. 17, 2017) (quoting 42 U.S.C. § 12102(1) and citing 29 C.F.R. § 1630.2(g)(1)(i)–(iii)); *see also* 29 C.F.R. § 1630.2(j)(3)(iii) ("[A]pplying the principles set forth [herein], it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: . . . major depressive order . . . substantially limit[s] brain function."). Here, Mr. Rock alleges that his Major Depressive Disorder is a condition that "affects [his] ability to sleep, concentrate, think, communicate" if left untreated. (ECF No. 26 ¶ 30 (quoting 42 U.S.C. § 12102(1)(a).) As such, Mr. Rock plausibly alleges that he has a disability under the ADA and the VHRA.

Regarding element two of an ADA and VHRA claim, he sufficiently alleges that Eastern Gas had notice of his disability. Mr. Rock states that "on September 23, 2024, he completed a Confirmation of Request for Reasonable Accommodation form" in which he requested an accommodation to "assist with treating my disability by working with my provider in more depth." (ECF No. 1 ¶ 15.) On September 24, 2024, Mr. Rock submitted a statement from his

---

[7] The VHRA does not define "disability." *See* Va. Code § 2.2-3900, *et seq*. However, as previously noted, "VHRA state claims mirror their federal counterparts and are subject to the same standards." *Ayers*, 2024 WL 4182706, at *9.

9

Licensed Professional Counselor, Ms. Green, which stated that "[w]hile [Mr. Rock] is pursuing this treatment he would benefit from certain accommodations." (ECF No. 1 ¶ 16.) On October 1, 2024, Mr. Rock sent an email to HR Business Partner, Ms. Bullett, explaining that his "disability requires time-consuming management and can be distracting in environments that are not structured to provide stability." (ECF No. 1 ¶ 19.) Thus, Mr. Rock plausibly alleges that Eastern Gas had notice of his disability.

Regarding element three of an ADA and VHRA claim, Mr. Rock plausibly alleges that he could perform the essential functions of his position with reasonable accommodation. In his October 1, 2024 email to Ms. Bullett, he stated that "[t]he hybrid schedule of working one day from home, which has been in place, has allowed me to maintain my work performance and ensure my condition remains manageable." (ECF No. 1 ¶ 19.) He further alleges that he was rated a "Successful Performer" in the second and third quarter 2024 performance evaluations, during the time period that Eastern Gas "permitted all employees, including [Mr.] Rock, to work remotely one day per week." (ECF No. 1 ¶¶ 9, 13.) Further, Mr. Rock stated that he "recently received a raise and bonus." (ECF No. 1 ¶ 31.) Thus, Mr. Rock plausibly alleges that he could perform the essential functions of his job with reasonable accommodation.

Regarding element four of an ADA and VHRA claim, Mr. Rock plausibly alleges that Eastern Gas refused his request for accommodation. On September 23, 2024, Mr. Rock "completed a Confirmation of Request for Reasonable accommodation form, wherein he requested being allowed '[t]o continue to keep my hybrid schedule of 1 day remote on Fridays.'" (ECF No. 1 ¶ 15.) In the request, Mr. Rock stated that keeping his hybrid schedule would allow him to continue "treating [his] disability by working with his provider in more depth" while completing his tasks for work. (ECF No. 1 ¶ 15.) In support of his request, Mr. Rock submitted

a statement from his treatment provider. On October 1, 2024, Ms. Bullett sent a letter explaining that "Eastern Gas was denying [Mr.] Rock's requested hybrid work accommodation."[8] (ECF No. 1 ¶ 18.)

Eastern Gas contends that Mr. Rock's claims for failure to accommodate falter because Eastern Gas offered him alternative reasonable accommodations to working remotely on Fridays: "a huddle room for his appointments, leave for his appointments (even with short notice), and a compressed schedule that would allow him to be home Friday afternoons." (ECF No. 8, at 8.) Eastern Gas argues that "such accommodations are eminently reasonable and accommodate his needs." (ECF No. 8, at 9.) Eastern Gas argues that "[i]t is well-established that an employer need only provide a reasonable accommodation, not a 'perfect' accommodation." (ECF No. 8, at 8.)

Significantly, the cases on which Eastern Gas relies for the need to provide only a reasonable accommodation all involve summary judgment. *Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 167 (4th Cir. 2024) (holding that, at summary judgment, "as long as the employer's chosen accommodation is reasonable, even if not perfect, our inquiry is at an end"); *Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021) (finding that district court properly granted summary judgment on plaintiff's failure to accommodate claim because "an employer is not required to provide 'the exact accommodation that the employee requested,' and in the alternative may provide 'an alternate reasonable accommodation' at its discretion") (citation omitted); *Washington*, 677 F.Supp.3d at 400 (granting employer's motion for summary

---

[8] Mr. Rock further states that Eastern Gas "den[ied] [his] reasonable accommodation for disability, specifically by refusing to consider [Mr.] Rock's need to work remotely once per week." (ECF No. 1 ¶ 28.)

judgment, finding that employer offered employee alternative reasonable accommodations other than full remote work for her disability)

However, whether an employer's alternative proposed accommodation is reasonable is question of fact that cannot be decided at the motion to dismiss stage. *Webb*, 2019 WL 2992011, at *2 n.2 (rejecting employer's argument at the motion to dismiss stage that plaintiff's proposed accommodation was unreasonable, stating that "the Court will not decide the issue at the motion to dismiss stage" because it was a "question of fact"). At this juncture, the Court's inquiry is limited to whether Mr. Rock satisfies each element of a prima facie failure to accommodate claim. Mr. Rock plausibly alleges the fourth element of a prima facie failure to accommodate claim under the ADA and VHRA—that Eastern Gas "refused to make such accommodations" by denying his request for a hybrid work accommodation. (ECF No. 1 ¶ 18; *Sumner*, 2016 WL 5852856, at *5.)

Eastern Gas further contends that Mr. Rock's failure to accommodate claims cannot succeed because Mr. Rock "fails to allege facts from which it could be plausibly inferred that his requested accommodation was necessary to perform the essential functions of his job." (ECF No. 8, at 9 (emphasis omitted).) Eastern Gas argues that Mr. Rock "concedes that he can more than satisfy the essential functions of his job without any accommodations . . . he continues to work in-person five days a week on a regular schedule; and, during this time, he has performed so well that he received a raise and a bonus." (ECF No. 8, at 9.) However, under the ADA "a 'qualified individual' means an 'individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position.'" *Sumner*, 2016 WL 5852856, at *6 (quoting *Shin v. Univ. of Md. Med. Sys. Corp.*, 369 F.App'x 472, 479 (4th Cir. 2010). Further, Mr. Rock alleges that although he "has been reporting to work every

12

day in order to keep his job", his "mental health has deteriorated significantly [due] to the unrelieved stress", "result[ing] in physical manifestations of anxiety, including heart problems and numbness in his extremities." (ECF No. 1 ¶ 30.) Thus, Mr. Rock does not fail to state his claims for failure to accommodate in Counts I and III on this ground.

### B. Mr. Rock Fails to State a Standalone Claim for Failure to Engage in an Interactive Process Under the ADA in Count II

In Count II of his Complaint, Mr. Rock alleges that Eastern Gas failed to engage in an interactive process under the ADA. (ECF No. 1, at 8.) "The duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his [or her] employer his [or her] disability and his [or her] desire for an accommodation for that disability." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346–47 (4th Cir. 2013). However, an allegation of failure to engage in an interactive process "is properly considered part of a failure to accommodate claim." *Wells v. BAE Sys. Norfolk Ship Repair*, 483 F.Supp.2d 497, 511 (E.D. Va. 2007), *aff'd*, 250 F.App'x 552 (4th Cir. 2007); *see also Haneke v. Mid-Atlantic Capital Mgmt.*, 131 F.App'x 399, 399–400 (4th Cir. 2005) ("Implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation."). "[A]n employee cannot prevail simply by demonstrating that his employer failed to engage in the interactive process." *Wells*, 483 F.Supp.2d at 511 (quoting *Fleetwood v. Harford Sys. Inc.*, 380 F.Supp.2d 688, 701 (D. Md. 2005)).

Because an allegation of failure to engage in interactive process is properly considered as part of a failure to accommodate claim rather than an independent claim under the ADA, the Court will dismiss Count II of the Complaint.

### IV.  Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Defendant's Motion to Dismiss.  (ECF No. 7.)

An appropriate order shall issue.

Date: 7/1/25
Richmond, Virginia

　　　　　　　　　　　　　　　　　　　　／s／
M. Hannah Lauck
United States District Judge